Our first case for today is 2018-11559, United States of America v. Paul Anthony Montanez. Mr. Wright, you may proceed with argument. Thank you, Judge Elrod, and may it please the Court. My name is Matthew Wright. I'm here on behalf of the appellant, Paul Montanez, and today we're asking this Court to do three things. First, we're asking you to reverse the lifelong ban on possession of any copyrighted materials. Second, we're asking the Court to reverse the lifelong ban on possession or use of all gaming consoles. And third, we're asking this Court to vacate the 300-month sentence as substantively unreasonable. Now, if I could return to my first point, Your Honors. You argue the sentence was substantively unreasonable to the district court? The objection was raised, Your Honor, and the government has conceded that the objection is preserved. The argument was against an upward departure or variance. That was the way that it was positioned to the Court below. This Court's precedent does currently require a post-pronouncement objection, which was raised here. At the sentencing hearing, or when? It was, Your Honor. I could get the page number for you in rebuttal in the argument, but there was an objection afterwards, and the Court, I believe, even said the objection is preserved. But I'll try to get the page number for sure. Returning to my first point, Your Honors, the restriction on copyrighted materials is breathtaking in its scope, and it's hard to take seriously. It may have been a mistake. It's definitely something the parties didn't catch and the district court didn't catch. You read it as separate from the gaming console restriction? I'm sorry? You read it as separate from the gaming console restriction. I mean there's not even an and or an or. I agree, Your Honor, but I don't believe there's another way to read that restriction. In other words— Well, no gaming consoles, right? And you can't download copyrightable material with respect to the gaming console. And, Your Honor— I'm not saying that's the only way to read it. I'm just saying that's a narrow way to read it. I'm not sure that it is a natural way to read that sentence, and it is not the way that the government has advocated that this court read that sentence. If we did read it that way, would that solve your problems? It would solve problem number one, and we would go immediately to problem number two. So I'm happy to hear that this court would not countenance a universal, lifelong restriction on copyrighted materials. We didn't say that. We haven't made a ruling. We hope you will. Well, if there's an argument that that is too broad, then why can't it be restricted related to the computer games? Well, the gaming console, the objection that we have briefed in this case, and I think is right, is that there is no limitation to gaming consoles that have a communicative ability. And that's the only way the government has defended this restriction. I should correct myself. The government also said there was apparently a lie that the defendant told to the police that said the first time I came into contact with victim number one, he just wanted to buy a gaming controller. I don't think that anyone – I don't think that the government believes that's true. The police didn't believe that was true. The district court, I believe, said that he was lying to the police. But that's the only other connection to this case. But our point is that the condition goes beyond what is reasonably necessary in this case because it isn't limited to devices that can communicate with other people. Internet. What if it was limited to computer – allowed computer games that are with a cartridge and it's a defined universe? Your Honor. Would that be satisfactory? If it were limited to gaming consoles that had the ability to communicate with other people. With the Internet. With the Internet. Then in that situation – Not every gaming console – I mean, I know most modern ones are, but I remember a day where we played gaming consoles that were little cartridges and that sort of thing that could not communicate with the Internet or with other people. Right, Your Honor. I remember Pong. Yeah, I played Pong. And I think that's an excellent example. There is no basis on this record to ban the defendant from playing Pong. Although that's probably now in an Internet available forum. Internet Pong, yes. But in other words, if he's complying with the other restrictions, the district court has a lot of restrictions about how he can use the Internet. This condition doesn't pay its own way in terms of the restriction on the liberty of the defendant. Now, I would concede I couldn't establish plain error if this condition were limited to consoles with the ability to communicate with other people. They may be harder to monitor. Could we narrow it? I'm sorry. No, we are on plain error. We are on plain error on the conditions. That's correct, Your Honor. Could we narrow it? This court has the statutory authority to modify any judgment that is brought before it on appeals. So, yes, you could narrow it. You could say – Any Internet gaming device – Any gaming console capable – Any copyright related to computer games that are copyrighted material on computer games that are accessible on the Internet or can communicate. On the last thing, that's definitely – that takes away all of the bite of this condition. I'll say that the copyright part of it doesn't add anything or take anything away from it. Right? It's not – Pong was written after 1923. It's still copyrighted. So to return to Judge Duncan's example, even if the court limited it to copyrighted video gaming console games, he couldn't play Pong because it's still copyrighted. Copyright has the same connection to this offense that electricity did. I'll say, sure, there were copyrighted software that was used in the course of the commission of the offense, as there was electricity, but I don't think the court would uphold, even on plain error, a lifelong restriction on the use of electricity. Mr. Wright, can you remind us – I'm forgetting whether or not this was delineated properly in the PSR. No, this – It was not in the pre-sentence report, Your Honor. It was completely done at the hearing. Isn't that right? I wouldn't say it was at the hearing because some of the judges in our district, and Judge O'Connor is one of those, provides a pre-hearing notice of conditions of supervision. So he gave it to him, and then they signed at the hearing. Right, that they had notice. And you'll find that part – It was in writing. I'm sorry, it was in writing. That's correct. It was on page 47 of the record. You'll see that. What's going on? Why was there no objection in that format? You know, we had a big discussion about this last week, about the various forms in which these PSR objections and what the court gives notice, and why isn't that a way – certainly the lawyer would know if my client's having to sign this form, I should read the form. Your Honor, there's no question that they read the form, and I'll tell you why. If you look at this condition on page 47 of the record, the macro – it's obviously some kind of keystroke someone put in – there is a female gendered pronoun, and someone has come in and corrected that, or attempted to correct it, and said, no, it's he. That, I think, was probably what was on the mind. Probably like the court quite reasonably wants to do – wants to read this as something other than what the plain language says, because surely Judge O'Connor didn't intend to ban this man. I'm asking why the lawyer didn't raise an objection at that very – at the hearing in conjunction with the signing of the document. I think there was just a lot going on. I mean, I can't say. The lawyer's not with our office anymore. There was a lot happening. It appears that his attention was the court has used the wrong gendered pronouns, and is going to quickly go through and fix those. That's very minor compared to a lifetime ban on copyrighted material, isn't it? I agree with you 100 percent. We missed this. People are stuck on pronouns these days. I'll say, Your Honor, that to the extent that it matters, that correction didn't make it into the judgment, because if you look at page 51 of the judgment, it uses the copy and pasted language including the female pronoun. So even if we had objected, I'm not sure anyone would have noticed this. I think everyone would have to agree that if somebody had flagged this issue at the time, it wouldn't have made it into the judgment. I mean, you can see plain error, though. I do. This is on plain error. We had an opportunity to object, and we didn't. But I think it is plain in the same way that a restriction for the rest of your life on using electricity. We have done that on other reading materials, haven't we? You have, Your Honor. You have one published case where the court reversed the condition of supervised release on plain error as cited in the government's brief on page 26. That's United States v. Alvarez. I have a short list of unpublished cases where you've done it too, but if you would prefer that I submitted it in writing so they could respond, I would do that. Or I could read them now. I'm okay with either one of those. You can read them, and then if you want to provide a 28J that those are inapplicable or something or your own unpublished cases, you can. All right. Thank you, Your Honor. Within five days. United States v. Escobedo. I may be butchering the pronunciation, which I've gotten in trouble for in this courtroom before. 701 Federal Appendix 327, that was a restriction on nighttime. In other words, a curfew restriction in an alien smuggling place. That restriction was reversed on plain error. United States v. Jordan 756 Federal Appendix 472. That was from earlier this year from this court. That was an alcohol abstinence condition. Another alcohol drug treatment was Mahanera 611 Federal Appendix 201. These are restrictions that deal with someone's liberty in a way that wasn't connected to the offense in the right way, and they were all on plain error. Is there not a case that is directly about materials from the library? I just seem to recall one with Judge Smith. Is that not right? There may be. I should say that I've recently come into possession of this case, Your Honor, and I may be able to find the case that you're thinking of. In Prieto, this was a child sex case, and it was a pornography restriction. This court said the first three prongs were satisfied but declined to vacate it on the fourth prong. I'm happy to talk about the fourth prong in this case because this is much larger than simply pornography. But the point is that read plainly, as the language plainly means, it just cannot be countenanced on plain error or on preserved review, Your Honor. It's just too broad. But do you in any way believe we would have to send this case back, or is this something that can be said we construe it as this and limit it with a common-sense limitation? I don't think that there is a limitation to the language that exists in the judgment. In other words, it would comply with the statutory requirements as to the copyright restriction. So do we have to send it back, or can we? You can just vacate it. Vacate the part of this condition that deals with copyrighted materials. In other words, copyright doesn't add or take anything away as far as the objectives the district court was apparently trying to achieve. If, for instance, there was a public domain piece of software, that wouldn't help. The objective of the district court is trying to get the copyright part. We went searching for it to see if it had happened before. Are there games that are in public domain? I think those are licensed. I think they are copyrighted but with an open source license. But the point being that if the worry is he's going to use the computer to contact other potential victims, then the intellectual property rights are completely irrelevant to that. So we're asking you to strike the copyright aspect of this because it's not getting it. This isn't a piracy case. It isn't a copyright infringement case. Of course, I will be here and say you can't do that for the rest of someone's life, even in those type of cases. But what I'm saying is it doesn't pay its own way. There are some very detailed restrictions on how he is to use computers, how he is to use the Internet, and what sort of procedures he's allowed to do. There's even a discussion in the conditions on what sort of software he is and is not allowed to install on the computer, and yet then you have what appears to be a lifelong restriction on ever doing it. How do we know? It is. How do we know what's going to be available in 300 months? I mean the whole thing is sort of naive. I think that if there was a need to get at the copyright aspect of software, it's hard for me to imagine what that would be. But the probation office could come to the court then and look for something that was tailored to what happened. What we have here is the record that was before the district court at sentencing, and the court imposed a restriction that is breathtaking in its scope. So stricken of the copyright limitation and limited to gaming consoles, and I'm sorry, if the remainder of the condition were limited to consoles with Internet connectivity or the ability to communicate with others, I couldn't establish plain error. But neither of those things can be read from the condition itself. We would need something from this court that said that. Do you want to briefly turn to your other argument? Yes, Your Honor. On substantive reasonableness of the sentence, this court is going to make a judgment the same way that the district court did. I don't think my friend and I are going to be able to agree on this, so I apologize for that. There's two things I'd like you to consider. First of all, on page 93 of the record, the government told the district court that a 240-month sentence would be appropriate in this case. Now, that would be an upward variance or departure. It was more than what the defendant was asking for. But the government cannot say now that 300 months is the minimum that is necessary to achieve the statutory factors because the government said 20 years was enough. The second thing to point— We have upheld very long sentences in this area, both in terms of percentage and magnitude in the past under our published case law. I agree, Your Honor. There's a recent case from Judge Costa, United States v. Hoffman, where there was a reduction. Almost the mirror image of this was reversed as substantially unreasonable. That was 168 to 210 months, varied down to probation, and the court said that was substantially unreasonable. So this review does exist. The only other thing I wanted the court to think about when reviewing this issue is that this sentence is consecutive to the state sentences, including the state court sexual assault charge, which is still pending. So this wasn't a universal package. In other words, this isn't what sentence do we need to account for all of the conduct. This is the part of the sentence that is the solely federal part. So it has to be on top of that. So the combination of those two things, which is the government conceding that a 20-year sentence would be appropriate and the fact that this sentence is going to come consecutive to whatever the state does with the sentence, we submit those two things together make this sentence substantially unreasonable. But again, I suspect that my friend won't agree with that, and we submit it to the court's discretion. So in conclusion, Your Honor, we would ask that you strike the lifelong restriction on copyrighted materials as inconsistent with every aspect of the First Amendment except perhaps the right to free assembly, and we would ask that any gaming console restriction be limited to gaming consoles with Internet connectivity. There are no further questions. I have reserved some time. Your Honor. Ms. Williams. May it please the court. Christina Williams on behalf of the United States. I'd like to begin with the challenge supervised release condition, and this court should affirm for three reasons. First, the reasonable reading of the challenge condition is that the district court intended to limit Montanez's access to gaming consoles and related gaming-type applications and devices without prior approval from his probation officer. This reasonable reading does not infringe on Montanez's First Amendment rights. You don't think the copyright provision is overly broad? If it were to be read as a distinct provision and given the widest possible definition, which would be contrary to this court's case law, then the government would concede that it is too broad. However, that condition is not written in that manner. It's listed in a specific line item on page 51 of the record that first limits access to gaming consoles and then follows with a comma and then limits the access to copyrighted materials. The government's view is that by pairing those together, the district court intended to limit copyright materials as they relate to gaming consoles. This doesn't just address your typical Nintendo or Xbox. There are other gaming-type applications, for instance, that teens download to their cell phones. One is called Roblox, where teens can basically, or any user, can create a game and other people play it. There's opportunities for chatting. So there's gaming-type applications and devices that are not just your average gaming console. So it's our view that the district court was intending to limit Montanez's access to those applications the same way there was concern with gaming consoles, without prior approval. So this is not necessarily a lifetime prohibition. There is the ability for him to, at any time, call his probation officer. It doesn't even require a hearing and say, I'd like to play this game, I'd like to have this application, I'd like to have this device, with the probation officer giving approval. And this court has said in Miller that we expect that the probation officer will give approval for things that are for innocuous uses. So it's not a complete lifetime ban in perpetuity. I think the reasonable reading is to read those conditions together. So should we modify and say that the copyright only pertains to what is your position of those specific devices? So the government would be comfortable, and I think it would be reasonable, for this court to follow the model that the panels did in Seal, Juvenile, and Clark, where the court affirmed those conditions and then sent essentially instructions in the opinion to the district court that those provisions were to be interpreted reasonably so as not to prohibit the use or require approval for each and every instance. That's not the same thing. Modified and affirmed as is, and then give some instructions, is different than saying we construe this as this, and it must mean that or else it would be inappropriate and unconstitutional, so therefore we read it as only being this. That's different than saying we're just going to let the probation officer work this out with some helpful, gentle guidance. Is the government opposed to us saying that the copyright only applies to the gaming relationship? No. Not saying we affirm and say it's all great and we're just giving gentle, but actually stating that the only way this can be construed constitutionally and appropriately is if we construe it that way. No, Your Honor, the government is not opposed. Okay. So whether it's whatever the exact language is, you know, the government would leave that to the court so long as it links, so long as the language is broad enough to include, as I mentioned, these other copyrighted applications that could be, for instance, put on a phone or a computer or some other device that are not your traditional gaming console. They'll continue to be integrated with it could be in your probably in about 300 months it will be able to be in your hand or in your head. Absolutely. Or embedded in you. So it's not going to be consoles probably, you know, we could have a science fiction seminar, but about the future. So it's hard to determine what would be the right language to use in that way. Absolutely, Your Honor, and that's why this court has in prior cases recognized that when the district courts fashion a provision of supervised release, they are attempting to be a little bit broader than what today's, the language necessary today because we are looking at 300 months from now. And as you highlighted, we have no way of knowing what the gaming universe looks like at that point. Is this intended, though, in the government's mind to limit your access to books about how to play Minecraft for dummies or, you know, best Fortnite tricks, you know, actual books and things that relate to gaming? A book that would simply instruct how to play Minecraft or how to, you know, play another game I think would be fine. However, a book that, and I would hope that one does not exist, that says how to find teenagers on Minecraft or things like that would obviously be inappropriate. I understand why Judge Allred is asking because literally the condition says she shall not possess copyrighted material, and even copyrighted material linked to gaming could encompass what Judge Allred is saying. Yes, Your Honor. And that doesn't, you don't believe that that would be appropriate to have a limit on that? Or the 100 best gamers of all time, a biography. Yeah. I don't think that that would be necessary. You know, the court could, however, make it a little bit broader so that if Mr. Montanez could in 300 months dream up a way to use that material to reach kids or something, then there might be a mechanism. To communicate with people. Right. It's a way, the problem is communication with others, not reading about video games. Absolutely. And to that point, would the government oppose, assuming that we vacate, a modification that makes clear that a ban on possession or use of gaming consoles has to be linked to the Internet? Because as I understand what you're saying, the whole point here is to prevent the defendant from having an easy way of drawing in minors. And that's my understanding of the ban on gaming consoles. They're linked to the Internet. It's a way of, you know, drawing in minors into your little world. Communicate. No, I do not believe the government would be opposed to that. Do you have anything else? So there are other reasons why this provision is not plain error, and I think it's important to keep in mind that standard here. As the court noted earlier, there was no objection in the district court, and there is also no case from this court, from another circuit, much less a consensus dealing with this specific provision. So to find that it would be plain error also requires getting over that hurdle of this court's case law. Most recently in Cabello where the court has said that where the court has not previously found a condition unreasonable or unconstitutional, it will ordinarily not full force strike the condition. And the condition is also reasonably related to the nature of this offense. There was discussion from the appellant that, you know, the government is essentially hinging on one line in the PSR at page 116 where Montanez tells the investigators that he was discussing Xbox and Call of Duty with the victim. And whether or not that's true, I do think that admission shows that Montanez is well aware that gaming consoles are used by teenagers and can be used to reach teenagers. And at page 34 of our brief we cite several articles, and I think it's fairly common knowledge today that that is a place where pedophiles can, you know, essentially hide behind their device, link up with kids. You can even send pornography over these gaming consoles today. So there's certainly a reasonable relationship between the two provisions. And if the court has no further questions on the challenge condition, I'll briefly turn to the substantive reasonableness of the sentence. And I won't get into the details that are in the record. The court has, I'm sure, read those and doesn't want to hear them this morning. But here the sentence was more than reasonable because this is not the normal child enticement case. The implication is made in the appellant's brief that his behavior was just part of child enticement. Well, the government would submit that this is one of the most egregious cases coming out of the Northern District, and I'm sure that this court has seen. Montanez is a hands-on sex offender. He created videos and pictures, extremely inappropriate and disturbing, that he sent to his victims before eventually planning to show up and meet the girl. And when he shows up, he's not just in a car to take her out. He has mattresses, essentially a rape kit in the trunk. So this is a very disturbing individual. And the 300-month sentence was certainly substantive. What's your response to the argument made by counsel that the government recommended, was it 240? So the government did ask for 240, but that is not an admission or concession from the government that only 240 months is necessary. And that's not really the question before this court on abuse of discretion review. The question is, was it substantively reasonable? Was it an abuse of discretion? And the appellant has simply not met that threshold. And as Judge Elrod noted earlier, the court has certainly affirmed extremely high sentences in child pornography cases and other sex offender cases. In Diehl, the court affirmed a 600-month sentence. And certainly if all of the conduct from the PSR that was used as part of this enticement scheme is considered, and those were charges for each of those, it would certainly be well above the 300 months. So that sentence is substantively reasonable. So if the panel has no further questions, the government asks this court to affirm the sentence. And as we discussed earlier with the condition to modify it as it seems fit, but leave the gaming console portion of that intact with the linkage to the necessary copyrighted materials. And if the panel... We have your argument. Thank you. Thank you, Your Honors. Just a few points in reply. If the problem is communication, to use the court's words, if the problem is communication, then copyright is out of left field for that. And what about the argument the government is making that what this is targeted towards is a downloading of apps that essentially, as I understand it, function as games, under which one could... And I could see how that's beyond gaming consoles. It's still linked to the idea. I see people playing video games on phones all the time. None of them are my children, I'd like to note for the record. But I see that all the time. Your Honor, anyone with children of that age struggles with screen-time games. You know, I could tell that Judge Elrod has bought some of these Minecraft instructional books as well. If this were a condition about installing games, then I agree with you. That's appropriate to limit... In other words, to sort of cover the waterfront on ways that one might communicate with children. You cannot read this condition that way. Downloading copyrighted material or devices. Right. So, first of all, it allows the downloading of public domain materials, which, again, doesn't get at the restriction that you're talking about. And number two, the fact that the materials are copyrighted does nothing to advance the district court's appropriate objective. In other words, if the problem is communication, then say so. This was a mistake, and I don't think that we should be afraid to say so. We're first asking this court to strike that part of this condition because it's wrong. Short of that, we would be happy with a limitation that was otherwise affiliated with the gaming console. But again, I think that Judge Elrod is right. No books, no newspaper articles, no public advocacy related to video games. That would not be acceptable under this court's precedent, and it would be plain error. I know you said this in your principal argument, but just so I understand, your argument is that the copyright clause of this sentence, that's a mistake altogether. That was not intended by the district court to get at anything? Maybe we can't know that. It's hard to say that it's not intended. All we know, the district court doesn't get a say in this. In other words, all we can know is what the language says. But the language here says, she shall not download, possess, and or install copyrighted material or devices without prior permission. In other words, there is no other way to read that other than a restriction on the possession of copyrighted materials. And it seems like we'd be doing the district court a favor to limit it to keep from sending back, but the instruction as written is overbroad and violates the statutory requirements. And notwithstanding the lack of objection of the district court, my client is asserting his right to appellate review of that aspect of the condition. In other words, the government has quite candidly conceded that the instruction cannot be applied as written. The appropriate remedy then is to strike it. The court could modify it. Again, so long as that modification were limited to video gaming consoles and didn't include Pong, for instance, which is copyrighted materials. Don't we have cases that say we can vacate and remand to the district court and have another try at this? You can, Your Honor. We'd also welcome that too. In other words, the main thing is we don't want it to stay as written. We don't want to leave it to the discretion of some future probation officer to limit what books my client's allowed to read, what Atari games he's allowed to play. In other words, that's the restriction on his liberty. And my friend said that plainness is ordinarily not shown where the court hasn't acted, but again in the cases we cited earlier, Alvarez, Escobedo, Jordan, Prieto, maybe Jordan had some prior law on it, but these are new restrictions. In other words, it would be unusual to find a restriction like this in the record. Here we do. So it's not like prior authority is always required for plainness, and we don't think that this satisfies any form of appellate review, whether on plain error or otherwise. So if the court has no further questions at this time. Thank you very much. Thank you, Your Honor. This case is submitted.